We'll hear the next case, Zhang v. Whittaker. Good morning, Chief Judge Katzman, Judge Carney, Judge Cabranes. My name is Mario Urizar. I'm a police decorator. I represent Zhang. It's well settled that individuals in removal proceedings are afforded due process rights. Regarding this case, it's our position that Zhang was not provided the full and fair hearing. And that's one of the points that I want to address. The other point is going to be the motion to continue, and we believe it was also an abuse of discretion. Could you help me understand just a factual matter? My understanding is that Mr. Zhang wrote to his congressperson in 2013, and then it was in 2017 that Congressman Pallone requested an expedited hearing, an earlier hearing date. Is there anything in the record to show that they had communicated in the four years in between, or was this just pending there and then randomly came up? So it's not in the record, Your Honor. I was able to chase down the facts a little bit further. He has been working with or he's been asking Congressman Pallone for some help in his immigration cases ever since his I-360, which is the petition for the VAWA, which is the Violence Against Women Act. And he's been helping him ever since in 2013. Come 2017, when his case gets reopened- You mean so he had been communicating with a congressperson? Yes. So there's material not in the record? Yes, Your Honor. There's material that is not- Regarding the communications? Regarding the communications, yes. What we do know is when that letter was sent to Immigration Judge Holm, that it included that it was a letter. It included also that 2013 address, and it also included that 2017 notice of hearing. So those were the three documents that were sent to the Immigration Judge. And that's where it was requested for an earlier court date. Could you help me understand, and I may be incorrect in my assessment, so please point me to where I have any error. My understanding was that Zhang agreed to have the March 28, 2017 hearing converted to a master calendar hearing and expressed a willingness to adjudicate on the merits that day. Is that correct? No, Your Honor. It's not correct. What Zhang- The first point is that that motion, that letter should never have gone past the clerk. It was an ex parte communication outside of the realm of representation of legal counsel. It wasn't even signed by Zhang himself. It should have never gone past the clerk, never gone into the hands of the Immigration Judge. It should have been rejected. But because it was introduced into the record, it was, as the Immigration Judge considered it, a motion. And he granted that motion and therefore accelerated to the individual hearing. And within that individual hearing is when the judge starts to learn about the facts of why he granted that motion, something that should have been probably looked at before accepting and granting an ex parte motion. So to address Your Honor, no, he didn't request to accelerate. That was a communication by Congressman Pallone. And what Congressman Pallone requested was an earlier court date. At most, you can assume that's an earlier court date of a master hearing, not be thrown into a trial as your first- Your argument is that he wasn't asking to basically skip all of the preliminary procedural safeguards. Even if we assume that Judge Pallone may represent Zhang, which I- To move things along. Yeah. He wanted to- Safeguards. Exactly. Yes, Your Honor. He didn't want to do away with these safeguards. These safeguards are in place for a reason. They're in place so what just happened to Zhang doesn't happen. We want to know what are the issues that are coming up. What do we need to address at the trial, which is the evidentiary hearing, the individual hearing. What documents must be presented. Every judge has its own local rules. But they're not published. They're not publicated. So we only know that once we get into the master hearing how a certain immigration judge wants us to present the case. Some want IRS tax transcripts. Others just want the filings. Some of them don't like the medical records introduced into the record. Some of them like them to be handed to the ICE attorney, which is what happened here. Would there be circumstances where you think the master hearing would be appropriate for resolving the case on the merits? Absolutely not, Your Honor. If the master hearing was meant for or set for a motion to terminate, which is all the issues are well settled already and we can move on. We can let this go to a different agency, let's say USCIS. Sure, a master hearing can do that. But when it's set for a trial or when you want a hearing, an evidentiary hearing, I don't think it's appropriate to ever skip the master hearing. I believe Judge Holmes should have known that noticing the record. I'm taking it that Judge Holmes answered that motion having seen the record and probably saw that things were missing within the record. Speaking of things that were missing, maybe you could clear up some confusion I had also about the I-693 medical examination report. In our record, we got something that looks like the copy of a sealed envelope that has a notation on it and you can't really tell what's inside or whether it's the complete missing document. I understand there are privacy issues involved with medical examination, but it's difficult for us as a reviewing court to determine whether the document that was required was actually available and presented. And the BIA focused on that as well, that it was missing. Can you clarify? Yes. So as I was stating to Chief Judge, master hearings, we learn about the local rules. One of these local rules is what do we do with the medical record? Do we provide it to the judge or do we provide it to counsel? Most of the times, and from my experience, Your Honor, I've always provided it to the ICE counsel. They open it and then they give it to the judge. The ZHANG is not allowed to open that. So what the record shows is a photocopy of that sealed record. So it's not allowed to open it, so it's provided by the physician. Yes. Sealed. In a sealed envelope to present, I see. Yes. And that's what you see in the record. It's a photocopy of that sealed envelope, and it states that it was provided to DHS. That helps me. Thank you very much. Okay. I see my time is up, Your Honor. I'd like to make some other points regarding the motion to continue. Okay. So regarding the motion for continuance, we believe that it was an abuse of discretion to deny it. There is a two-pronged test regarding the motion to continue. One of them involved whether there was a legal error or a factual error. We believe the legal error was met, given that they addressed the motion as if it was a legal representative, but it was, in fact, an ex parte. That should have never been into the record. That should have never been addressed by the immigration judge. The quinosas show that it was not within the range of permissible decisions, and we're arguing, given that the whole procedure was in violation of due process, which prejudiced him at that moment, that he couldn't argue his case fully to the extent that he should have been. That was not within the permissible range of those decisions to deny a continuance. Nothing further? Thank you. Thank you. Good morning, Your Honors. May it please the Court. Jessica Strokos on behalf of the United States Attorney General. Your Honors, this Court should deny the petition for review because Zang has not shown a due process error or that the Board engaged in proper fact-finding. To show a due process error, a fundamental step, and this is demonstrating substantial prejudice, which is to say that he had to make some showing that the result in his case might be different. And I believe Judge Carney got to some evidentiary points in this case. Zang never submitted certain pieces of missing evidence that the agency identified. He was given the time and opportunity to do so. Indeed, he submitted 117 pages of additional evidence before the Board. But some of the materials he was supposed to submit weren't immediately available, as he represents to that now. And I think it seems that there was some confusion about how to present the medical record and I've seen the tax records also. There were some clarifications about an arrest that had happened at one point. And so those weren't all within his control. The fact that he submitted, you know, over 100 pages of other documents doesn't mean that the critical ones were available in the compressed time period. Am I wrong in understanding that? Your Honor, I would argue that there was no compressed time period here really because Mr. Zang received his I-360 approval on March 13, 2013. And in that approval, it notes that he would seek adjustment of status. So at least from that very date in 2013, he knew that he needed to prove the regulatory and statutory requirements for adjustment of status as well as showing that he was entitled to a favorable exercise of discretion. And it's certainly reasonable for the agency to expect someone to come forward asking for a favorable exercise of discretion from the government to present this type of evidence if you have a criminal conviction. So if he had come forward with a medical report from 2013 at the time of this hearing several years later, would that have been sufficient? Your Honor, I don't believe so. I believe it has to be within a previous calendar year. But it is in the regulation stating that an applicant for adjustment of status is required to present this report. And the reasoning is actually given in the regulation itself at 8 CFR section 1245.5 because it's determining compliance with INA section 212A1A2, which is an inadmissibility ground. I understand why it's reasonable to require that, but my question still is I don't think it's an answer necessarily to say that he was on notice since 2013 that he would have to produce documents if the timing then was, you know, if he got notice in March of 2017 that a hearing was going to be held of uncertain character within two weeks later and he had to provide an updated information available only from third parties. I mean, that was what I refer to as a compressed period. Why is that a wrong understanding? Certainly, Your Honor. Even within, assuming that he could not have possibly known before, I believe it was March 7, 2017, that he needed to have a medical record, his tax transcripts, and an explanation for his criminal history before his . . . Update one. Correct. And all of those circumstances. And within, I believe it was 21 days by March 28, 2017. Isn't there some dispute about when his lawyer actually got notice? I thought it was March 15. Your Honor, on page 293 of the record, it shows that the new notice of hearing for the March 28, 2017 individual hearing specifically was mailed to Zhang and counsel on March 7, 2017. So I'm saying that I believe that the lawyer to whom it was addressed averred that it was not received until March 15. But in any event, we're talking about . . . In any event, Your Honor . . . Can I just . . . So, I think part of the problem here was that Zhang expected that there would be a preliminary master calendar hearing and not the individual hearing that took place. That's part of the problem. And that's part of the time compression issue. Because if the preliminary hearing, master hearing, had taken place in the normal course, then his argument is he would have had more time necessary to prepare for the case. When you look at what happened once the case goes to the BIA, the BIA says that, and correct me if I'm misunderstanding, that Zhang failed to provide, even on appeal, proof that his tax returns were actually filed. Failed to provide an adequate explanation as to the disposition of the criminal matter against him and proof of the completed medical examination. Yes, Your Honor. But the record . . . Looking at the record, it does seem to suggest some proof of each of these things. For instance, the IRS tax transcripts from 2013 to 2016. The many documents having to do with the way the criminal matter was disposed of. And as has already been mentioned, the sealed envelope labeled I-693. So how can one say that he didn't submit any documents, even on appeal? Your Honor, with respect to the medical record document, all we have is a sealed envelope with handwriting on it, alleging that it's the I-693, alleging that it is indeed this medical record. But it's not in the record. It's simply the envelope. But what else are you submitting on the medical exam matter, given that the medical exams are supposed to, and here I may be misunderstanding, are supposed to be submitted in a sealed envelope? Your Honor, I can't speak to how the medical exam itself is actually submitted. However, the medical exam document should have been actually submitted to the board. And in this case, the record doesn't exactly reflect that. All it reflects is an envelope with some handwriting. It alleges that it's the I-693, certainly, but we don't know what's in that envelope. It could have been an empty envelope. It could have been a different form. We simply don't know. And that's one of the problems here, is in the record, the board looked at that evidence and said, it's not here. And for that reason, even moving into Zhang's allegation of impermissible fact-finding, the board was looking at the evidence saying, do we need to remand because of this additional evidence that he's had the time and opportunity to submit after his hearing before the immigration judge? And the board said this evidence would not have changed the result in his case, in particular because where is the medical examination record? We have this envelope with handwriting on it, but we have nothing else. In your experience, could you tell me something about how often, under what circumstances, the individual hearing is essentially skipped and everything is resolved in the master calendar hearing? Your Honor, I don't personally practice before the immigration court. I only practice before the courts of appeals, so I do not have any experience in that. Perhaps counsel could provide some kind of idea of that. However, I would state that there is no requirement anywhere that master calendar hearings and individual hearings be held separately. In this case, all of the things that would have happened at a master calendar hearing, if it were held separately, were also held at the beginning of his individual hearing. The immigration judge addressed his motion to continue, or I guess his motion for additional time to submit evidence. The immigration judge took his submission of his I-485, his application for adjustment of status. These are typically things that would happen. The reason I ask the question is that, presumably it would be helpful to your case in some instance, in some way, if you could show that this is a prevalent practice. Your Honor, I honestly . . . But you don't know. Because my practice is not before the immigration courts, I cannot speak to that. I'm sure that I have colleagues that have practiced in the immigration courts before that could potentially speak to that, but I do not have that experience, so I'm sorry I can't answer your question there. Thank you. You have more time. Go ahead. Yes. Also, I wanted to just briefly address the factual background of the alleged error in accelerating Zhang's hearing. Zhang himself actually admits on the record that he requested that his hearing date be expedited. Zhang's counsel never objected and instead insisted on proceeding. Zhang's counsel agreed that the hearing was expedited at Zhang's request. You construed that with a desire to do without the mastery calendar? Your Honor, Zhang's . . . When people were referred to a hearing, there were supposed to be two hearings. Your Honor, Zhang's counsel states on page 213 of the record, we were hoping that we could adjudicate in front of you today. I think that also could mean we were hoping to get the process begun, and if there was more materials that we needed to submit to reach that final result, you would let us know and we could do that. I think that would certainly be a reasonable reading, Your Honor, had Zhang's counsel not also said on page 214 of the record that they wanted to proceed with his individual hearing that day because his client was here and they were willing to do that. On page 219, we are willing to go ahead, and page 220, we can go forward today, Your Honor. So at that point, Zhang had already made his motion for additional time to submit evidence and he had already been discussing taking testimony that day. So there was no objection at that time, and instead there was this insistence on proceeding with testimony. Your Honors, I see that . . . but in any event . . . Also, in individual hearings, I realize you say you don't practice below, that in individualized hearings, the hearings don't necessarily end at the end of that hearing. That is, if more information needs to be provided . . . In certain instances, Your Honor, the immigration judge may grant a continuance for good cause shown. In several instances, an immigration judge will actually issue an oral decision at the conclusion of the individual hearing. Which is after the master calendar hearing in most cases. Likely in most cases, but again, there's no requirement anywhere that a master calendar hearing and an individual hearing must be held separately. In this case, without making any broad law, in a circumstance where the master hearing substitutes for the individualized hearing, one would hope that the immigration court might be more sensitive to various information needs to be provided by the non-citizen. Your Honor, again, I would just note that adjustment of status does have statutory and regulatory requirements, and that it is a discretionary form of relief. And it is reasonable to expect someone who is asking for this act of discretion that needs to show that they're entitled to this act of discretion to show up prepared. And even if they don't show up prepared, to at least forward on that necessary evidence so that appeals before the board can take some time. And again, additional evidence was submitted here. It just simply did not satisfy the agency's need for the evidence in this case. Thank you. Thank you, Your Honors. Could you respond to your adversary's quotations? Yes, Your Honor. Sorry. Regarding the admissions, all those admissions were conditional. If you go back and read the transcripts, they were, I understand that Zhang had filed something. I understand that Zhang says he did something.  to provide whatever is missing, Your Honor. Where does he say that? So that is on page 218 of the record, page 250, Your Honor. Sorry, 218 and what? 218, 250. It first starts at 214. Okay. So 214, 215, 218, 249, and 255. She requests time to submit the documents. 218. 214, 215, 218, 249, and 255. Go ahead, please. Thank you. Within the record, we can also see that the ICE counsel wasn't prepared either for that day of hearing. They did not have their file. That's evident in page 233 of the record. The background checks warrant hadn't been done yet. That's on page 213 of the record. Regarding Respondent's position that he was given notice since 2013, since his approval of that visa, that's not real notice. As she stated, the adjustment application is discretionary. We need to know what the adjudicator wants to know about a certain case so we can get it approved. That is the main reason we have a master hearing. The master hearings, we get to know what the charges are, what our defenses are, what the judge at that case wants to know about this certain type of case and what he wants us to present, whether he has children, whether he has taxes. That's all found out. We get to know the judge, and the judge gets to know the case at the master hearing. It's indispensable. We can't skip that. It shouldn't be skipped, especially in this situation. And as, Chief Judge, you brought up, the evidence that the BIA says was not provided was, in fact, provided. They mentioned that regarding criminal records, he doesn't give an explanation as to what happened, how his criminal case was dismissed, but that's not true. That was provided on page 99 of the record. The taxes were provided on page 107 through 142, and the medical was provided in that sealed envelope. And that's- Your adversary says that the board just, I guess, had the image of the sealed envelope, if I understood correctly. That it, like we, couldn't figure out whether there was anything inside at all. That's correct. And I can only imagine that's done is maybe to provide ICE some sort of service of what's going to be filed with EOIR. So they provide it with ICE for- Who's authorized to open it? Usually it's, I practice within the immigration courts, so I can say it's usually ICE. We always provide it to ICE, which is DHS. And then they provide it to the judge at the individual hearing. Judge, there's nothing wrong with this. He looks like he's clean. He's good to go. So how could the BIA have been assured that it actually was provided? I mean, there seems to be this confusion. Well, they can't be assured it was provided outside of that photocopy in the statement from the attorney saying it was provided to ICE on that. Outside of that, maybe they could have remanded. I mean, there was enough there to maybe remand that record. If that's all that was missing was the medical, and the counsel says that he did provide it, then remand it therefore. But regarding all the other evidence, that was all provided. Thank you, Your Honors. It was a pleasure. Thank you both for your arguments. I appreciate them.